**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Michelle W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25-cv-50238 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michelle W. seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons stated below, Plaintiff's motion to reverse the Commission's final decision [13] is granted, and the Commission's request to affirm the decision [14] is denied.

**BACKGROUND**

A.      Procedural History

On May 26, 2017, Michelle W. ("Plaintiff") filed a Title II application for disability insurance benefits alleging disability beginning on January 1, 2017. R. 18. The Social Security Administration ("Commissioner") denied her application initially and upon reconsideration. *Id*. Following a hearing on September 18, 2018, Administrative Law Judge ("ALJ") Cynthia Bretthauer issue an unfavorable decision on December 17, 2018. R. 18-30. On September 29, 2022, this Court reversed and remanded that ALJ's decision.[1] The Appeals Council remanded the case for further administrative proceedings. R. 702. The Council directed the ALJ on remand to address the period prior to August 2, 2020. *Id*. On August 29, 2023, ALJ Lee Lewin held a telephonic hearing where Michelle W. appeared and testified. R. 586. Plaintiff was represented by counsel. *Id.* At the hearing, vocational expert James J. Radke also appeared and testified. *Id*.

On November 27, 2023, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 586-602. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 576-579. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion in support of reversing the decision of the Commissioner [13], and the

---

[1] *Michelle W. v. Kijakazi*, Case No. 20-cv-50195, 2022 WL 4566570 (N.D. Ill. Sept. 29, 2022).

Commissioner's response brief and motion for summary judgment [14], and Plaintiff's reply to the Commissioner's response [17].

      B.  The ALJ's Decision

In her ruling, the ALJ analyzed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of January 1, 2017, through August 1, 2020. R. 589. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; obesity; bilateral carpal tunnel syndrome, with status post bilateral release; left shoulder impingement; history bilateral rotator cuff tears; depressive disorder; anxiety disorder; and posttraumatic stress disorder ("PTSD"). *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 589-92.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work except she can occasionally climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; and occasionally stoop and kneel. She can frequently crouch and crawl. She can perform frequent bilateral handling and fingering and bilateral reaching in all directions. Plaintiff can understand, remember, and carry out simple instructions with sufficient persistence, concentration, and pace to timely and appropriately complete job duties. She is able to adapt to routine workplace changes with occasional contact with coworkers away from the general public and with no group, tandem, or teamwork. R. 592-600. At step four, the ALJ found that Plaintiff could not perform any past relevant work through August 1, 2020. R. 600-01. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mail clerk, collater operator, and office helper. R. 601-02. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from January 1, 2017, through the date of decision, November 27, 2023. R. 602.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical

bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); *see also Warnell*, 97 F.4th at 1054; *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits.").

## DISCUSSION

Plaintiff argues that the matter should be remanded because (1) the ALJ erred in relying on outdated state agency medical opinions; (2) the ALJ did not comply with SSR 96-8p in analyzing Plaintiff's ability to interact with others in the workplace; and (3) the ALJ violated SSR 16-3p in evaluating Plaintiff's pain and symptoms of anxiety, depression, and PTSD. The Court finds that the ALJ erred in relying on outdated state agency medical opinions and, therefore, remands this matter for further proceedings.

In her decision, the ALJ found that Plaintiff had the RFC to perform "light work" with specific limitations, as noted above. In her RFC analysis, the ALJ noted, among other things, that "[t]he claimant has degenerative disc disease of the lumbar spine, documented on a December 2018 MRI that revealed grade 1 degenerative anterolisthesis at L4-5, moderate to severe right-sided foraminal narrowing at L4-5, and right sided pedicle edema at L5 secondary to severe facet arthropathy." R. 594.[2] Additionally in support, the ALJ found the opinions of the state agency medical consultants to be persuasive. State agency medical consultant Henry Rohs, M.D. completed a physical assessment on August 14, 2017, at Plaintiff's initial level of administrative review. R. 597. Dr. Rohs found that Plaintiff "retains the capacity to perform light work except for occasional climbing and stooping, frequent kneeling, crouching and crawling, frequent handling and fingering bilaterally, frequent reaching with the right upper extremity, and occasional reaching with her left upper extremity." *Id*. In crafting these limitations, Dr. Rohs noted Plaintiff's hyperlipidemia, bilateral carpal tunnel syndrome, history of bilateral rotator cuff tears, and history of knee pain. R. 89. In her decision, the ALJ noted that state agency medical consultant James Madison, M.D., affirmed Dr. Rohs' initial physical assessment at the reconsideration level. Dr. Madison's determination is dated October 13, 2017. R. 597, 106. On December 31, 2018, Plaintiff underwent a lumbar spine MRI in response to her complaints of low back pain and right leg pain. R. 1008-09. Dr. Munib Sana interpreted the MRI, noting "Grade 1 degenerative anterolisthesis at L4-5; Moderate to severe right-sided foraminal narrowing at L4-5; Correlate with a right L4 radiculopathy; Right-sided pedicle edema at L5 secondary to severe facet arthropathy." *Id*. Neither Dr. Rohs nor Dr. Madison had the benefit of the December 31, 2018, MRI when forming their assessments of Plaintiff's limitations.

In support of the RFC, the ALJ noted the following regarding medical opinions:

> These prior administrative medical findings as to the claimant's physical capacity are persuasive as to the claimant's exertional and postural restrictions except that the undersigned has found the claimant to be limited to no more than occasional kneeling to better accommodate her lumbar disc

---

[2] As noted, the ALJ also found Plaintiff's degenerative disc disease of the lumbar spine to be a "severe" impairment. R. 589.

disease and obesity. However, no greater exertional or postural restrictions are otherwise warranted given the objective medical findings that show the claimant to have a normal, unassisted gait and no motor, sensory or reflex deficits, and negative straight leg raising. As for the manipulative limitations, their assessments limiting the claimant to frequent handling and fingering bilaterally are consistent with the claimant's history of carpal tunnel syndrome. Because the claimant appears to have had a good response to the release procedures, no greater limitations are warranted. As fully discussed above, the undersigned finds their assessment of the claimant's reaching capacity to be persuasive only as to the limitation to frequent use of the right upper extremity. The State agency doctors found that the claimant was able to reach with her left upper extremity only occasionally. This finding is not persuasive because it is inconsistent with the objective medical findings. Although the claimant has alleged some greater problems associated with her left shoulder, the only imaging report showed no acute pathology in the left shoulder. The consultative examination findings from November 2017 found some mild limitation in range of motion in the left shoulder. However, subsequent examinations from the claimant's medical providers have shown full range of motion of both upper extremities. All exams have shown normal strength and sensation in the upper extremities. The claimant notably has not had any surgery on either shoulder during the adjudicated period, and there is no indication that surgery has been recommended. In the absence of any significant objective medical findings or any significant medical treatment, the undersigned finds no basis for greater restriction in the claimant's ability to reach with her left upper extremity.

*Id*. at 598.

Plaintiff argues that the ALJ's reliance on the outdated opinions of the medical consultants is in error because the consultants opined without the information contained in Plaintiff's December 2018 MRI. Plaintiff's December 2018 MRI noted issues in her lumbar spine related to her degenerative disc disease – matters not addressed in the state agency opinions. While the ALJ did mention the MRI results in her decision, she did not indicate that neither Dr. Rohs nor Dr. Madison reviewed this MRI. Additionally, Plaintiff complains that the ALJ essentially "played doctor" by making her own judgment regarding the MRI results and concluding that Plaintiff was then capable of "light work." The Seventh Circuit has "said repeatedly that an ALJ may not 'play [ ] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (citations omitted). *See also, Graf v. Berryhill*, No. 17 CV 50086, 2018 WL 6018604, at *2 (N.D. Ill. Nov. 16, 2018) (the court's finding that the ALJ impermissibly "played doctor" was supported "by the fact that no medical opinions supported the ALJ's specific analyses of the medical record or her specific RFC findings").

Defendant argues the ALJ did not "play doctor" because the ALJ did not interpret Plaintiff's MRI results; rather she noted what the radiologist concluded. Defendant further argues that there is no indication that the state agency consultants would have altered their opinions

considering the December 2018 MRI because the record shows that there was no change in Plaintiff's symptoms either before or after the MRI findings. The Court is not persuaded by these arguments. Without medical scrutiny, it is difficult to determine what, if any, corroboration the MRI findings provide regarding Plaintiff's claims of pain as to her degenerative disc disease. As the Seventh Circuit held in *McHenry*, the ALJ "was not qualified to determine on his own whether the MRI results would corroborate the claimant's complaints 'without the benefit of an expert opinion.'" *McHenry*, 911 F.3d at 871 (citing *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018)). *See also Israel v. Colvin*, 840 F.3d 432, 440 (7th Cir. 2016) ("Because no physician in the record has opined on whether these [MRI] results are consistent with Israel's claim of disabling pain, and because the records are replete with technical language that does not lend itself to summary conclusions, we cannot say whether the results support or undermine Israel's claim."); *Durham v. Kijakazi*, 53 F.4th 1089, 1095 (7th Cir. 2022) ("…we repeatedly have criticized ALJs for interpreting the results of an MRI and using that interpretation as a basis for denying benefits."); *Grace O. v. O'Malley*, 22 CV 6168, 2025 WL 1331551, at *3 (N.D. Ill. May 6, 2025) (finding that where there is only objective medical evidence to rely on, with "no medical training or expert experience," [the ALJ] "is ill-equipped to interpret [this] evidence.").

The Court finds additional support in *Kemplen v. Saul*, 844 Fed. App'x. 883 (7th Cir. 2021). In that case, Kemplen argued the ALJ "played doctor" by not securing a medical opinion to include 2017 MRI results that post-dated the state medical opinion. *Id*. at 887-88. The Seventh Circuit held that the "[t]he issue, then, comes down to whether the new information changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by the non-examining physician and by evaluating himself the significance of [the subsequent] report, or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Id.* at 887 (citations and quotations omitted). The Seventh Circuit found it to be a "close call," but held that the ALJ erred by not obtaining a medical opinion interpreting the 2017 scans. *Id*. The *Kemplen* court concluded by noting that it is the plaintiff's burden to "produce evidence, not necessarily opinion" and stating: "[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion." *Id*. at 888. *See also Joseph J.L. v. Comm'r of Soc. Sec.*, No. 3:20-CV-621-MAB, 2022 WL 856811, at *9 (S.D. Ill. Mar., 2022) ("there is no medical opinion in the record that sheds light on the significance of the 2017 MRI. Given…the unknown but potential significance of the 2017 MRI, the ALJ erred in drawing conclusions from the technical medical evidence without relying on a medical expert"); *Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *8 (N.D. Ill. May 14, 2021) ("evidence postdating the state agency physicians' opinions did change the picture of Annette's condition to a degree that the ALJ erred…by evaluating himself the significance of the subsequent evidence"); *Brian M. v. Kijakazi*, 22-CV-191, 2023 WL 5852193, at *6 (N.D. Ill. Sept. 11, 2023) ("…when tasked with assessing the opinions of the agency physicians, the ALJ simply regurgitated the findings of those MRIs and determined – without the assistance of a medical professional – that they were *not* consistent with medium work but *were* consistent with light work. This was impermissible because the ALJ, on her own, was not qualified to make this determination without the benefit of an expert opinion.").

Here, the Court finds that the ALJ's decision was reached without an appropriate medical opinion addressing the MRI that postdates the medical consultants' opinions. The Court does not presume to know how to interpret Plaintiff's December 2018 MRI. However, it is possible that the

findings contained in the MRI could reasonably support Plaintiff's pain and difficulty sitting, standing, and walking, such that Plaintiff may be unable to meet the demands of light work. For these reasons, the Court finds that without the aid of an expert medical opinion regarding the December 2018 MRI, the ALJ did not support her decision with substantial evidence.

The case is remanded for further consideration of this issue. Plaintiff has raised other arguments, but further analysis of these issues is not necessary because they would not change the result here and can be addressed more fully on remand. Plaintiff's counsel should raise all such issues with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the Commission's final decision [13] is granted, and the Commission's request to affirm the decision [14] is denied.


Date: July 9, 2026                                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

6